IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARK ELLIOTT                                                     CIVIL ACTION NO. 16-10220-FDS

Plaintiff,

v.

BOSTON PROPERTY GROUP, LLC (FORMERLY KNOWN AS
JACOB REALTY), and UNASCERTAINED DEFENDANT, Then-Owner
of Building Located at 53 Orleans Street, Boston, MA
Defendants.

**COMPLAINT**

PARTIES

1. Plaintiff Mark Elliot ("Mr. Elliot" or "Plaintiiff") is a resident of Boston, Suffolk County, Massachusetts, and a citizen of the United States.

2. Plaintiff currently resides at 365 Sumner Street #3, East Boston, MA 02128.

3. Defendant Boston Property Group LLC, formerly known as Jacob Realty, ("Boston Property" or "Defendant), has offices at 279 Newbury Street, Boston, MA 02116.

4. Boston Property operated as an agent of Boardwalk Properties of Mission Hill ("Boardwalk Properties"), a real estate and property management company, located at 1518 Tremont St, Boston, MA 02120.

5. Defendant is a company located in Boston, Suffolk County, Massachusetts, and corporation of the United States.

6. The unnamed and unascertained defendant was the owner of the rowhouse building located adjacent to the Plaintiff's property, at 53 Orleans Street, Boston, MA.

7. Defendant was a resident of Boston, Suffolk County, Massachusetts, and a citizen of the United States, at the time of the events upon which this complaint rests.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 42 U.S.C. § 12188(a) and 28 U.S.C. § 1331 This Court may grant equitable relief, monetary damages, and a civil penalty pursuant to 42 U.S.C. 12188(a)(1) and 28 U.S.C. § 2201 and 2202. Additionally, or in the alternative, applicability of federal statutes is authorized by Contract between Plaintiff and Boston Realty.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to this claim occurred in this District.

## FACTS

1. On the night of February 4, 2013, the Plaintiff's properties at 265-267 Sumner Street East Boston, MA 02128 were burned in a fire that spread from a neighboring row house.

2. The Defendant, as an agent of Boardwalk Properties, managed the Plaintiff's property at 265-267 Sumner Street, Boston, MA.

3. The fire and smoke detectors had been rendered inactive by the Defendant; that is, they were incapable of detecting fire or signaling the building's residents of any smoke or fire.
4. The fire began on the rooftop of a neighboring building and spread to the rooftop of 267 Sumner Street.
5. The roof, second and third floors were severely damaged by the fire.
6. During the fire, the detectors did not signal for smoke from the neighboring fire or alert the residents when the fire had entered the building.
7. Fire and smoke detectors at other buildings went off because of the heavy presence of smoke,
8. The fact that fire and smoke detectors at nearby buildings were triggered is a strong indication that the detectors in the building adjacent to the initial fire, specifically, the Plaintiff's building, should have alerted the residents of the approaching fire.
9. The detectors also should have signaled when the fire had entered the building.
10. The fire displaced 21 people and damaged two buildings.
11. Two people were taken to the hospital and 100 firefighters were needed to bring the fire under control.
12. According to the Boston Globe, the fire was brought under control by 12:15 am, more than two hours after the fire reached the Plaintiff's building.
13. The fire and smoke detectors had been removed by Raul Lorenzana, a representative of Boston Property, formerly known as Jacob Realty.

14. The Plaintiff discovered their absence when he was descending the stairwell with his luggage in December 2012, before embarking on an international trip.

15. Upon further examination, he discovered that the smoke detectors had all been removed and the central system that the detectors were wired to had been deactivated.

16. The central system had a safety backup system that would signal even when one of the detectors had been completely removed from the wall or ceiling.

17. To prevent the signals from sounding off in the building, whoever removed all of the detectors had disabled the system as well to prevent the tenants and landlord, the Plaintiff, from hearing the sound which could be a nuisance but more importantly, could alert them to the missing smoke alarms.

18. The Plaintiff immediately called Tashina McKenzie, then Manager of Boardwalk Properties, to notify her of the problem and inquire about their removal.

19. Ms. McKenzie expressed surprise but acknowledged that Raul Lorenzana, who was then a former employee, had been the one to remove them.

20. The Plaintiff demanded that Boardwalk Properties send Raul Lorenzana, or his replacement, out within 24 hours to install smoke detectors and shortly thereafter, have representatives come out to reactivate the central system which had also been deactivated and wire the detectors to the system properly.

21. The Plaintiff had been on his way downstairs with his luggage because of his upcoming business trip to Thailand. He was assured that the fire alarms would be installed within twenty four hours and he left for his flight.

22. He received notification that the smoke detectors were installed.

23. After the fire, it was apparent that the smoke detectors had not been activated so that they signaled the tenants when smoke or fire was in close proximity or even entering the building.

24. The fire detectors also were not centrally wired into the system so that it would be apparent that they were inoperable, missing batteries, or whatever kept them from being active.

25. They had also not been tested.

26. Three floors of the Plaintiff's property sustained water damage.

27. The second and third floors and roof were severely burned and damaged.

28. The property had to be almost completely gutted for repairs to begin and many delays ensued because the water froze due to the inclement weather conditions in the months following the fire.

29. The owner of the building where the fire began, the unnamed Defendant, had code violations that included asbestos which caused the City to prevent the Plaintiff from having the snow shoveled, after the fire.

30. The Defendant-owner failed to fix a leaking roof that had been leaking onto the Plaintiff's property prior to the fire.

31. This condition was exacerbated by the water used to fight the fire at the Defendant-owner's building.

32. The Defendant-owner failed to replace the aged and insufficient firewall shared by the Plaintiff and Defendant-owner's properties.

33. The Plaintiff had moved forward with the replacement on his own prior to the fire.

34. The Defendant-owner had asbestos present in the building that was discovered after the fire, resulting in a citation.

35. The Defendant-owner was also found to have caused the fire due to failure to correct and rehabilitate aspects of the building on Orleans Street.

**CAUSES OF ACTION**

<u>DISCRIMINATION: VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT</u>

36. This action is brought Plaintiff to enforce the provisions of Title III of the Americans with Disabilities Act of 1990 ("title III" and "ADA"), 42 U.S.C. § 12181 a seq., and its implementing regulations, 28 C.F.R. Part 36.

37. Paragraphs 1-28 are incorporated herein.

38. Plaintiff is a qualifying person with cognitive and physical disabilities. A copy of Plaintiff's disability placard is attached as "Exhibit B".

39. Defendant offers parts of the properties open to guests, potential clients or visitors.

40. In addition or in the alternative, in section (f)(4), the Contract calls for Boston Realty to comply with law "whether federal, state, or local, relating to fair housing, rent control, discrimination, and health and welfare." The Americans with Disabilities Act is such federal law.

41. Section 702 of the 2010 ADA Standards for Accessible Design require the fire alarm installed to meet the specifications of NFPA 72. NFPA 72 specifies characteristics for visible alarms, such as flash frequency, color, intensity, placement, and synchronization.

42. By removing the fire alarms previously installed, Defendants have rendered them inaccessible to individuals requiring such accommodations.

43. Defendants discriminated against Plaintiff on the basis of disability in terms of the full and equal enjoyment of its services, facilities, privileges, advantages, and accommodations, in violation of 42 U.S.C. § 12182, and its implementing regulations at 28 C.F.R. Part 36.

44. Defendants' violations of Tittle III include, but are not necessarily limited to:

    (a) Denying, on the basis of disability, the opportunity of an individual or class of individuals to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of Defendants in violation of 42 U.S.C. 12182(b)(1)(A)(i), and its implementing regulation, 28 C.F.R. § 36.202(a);

    (b) Failing to afford an individual or class of individuals, on the basis of disability, with the opportunity to participate in or benefit from the services, facilities, privileges, advantages, or accommodations by Defendants that is equal to that afforded to other individuals, in violation of 42 U.S.C. § 12182(b)(1)(A)(ii), and its implementing regulation, 28 C.F.R. § 36.202(b);

    (c) Providing an individual or class of individuals, on the basis of disability, with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that afforded to others, in violation of 42 U.S.C. § 12182(b)(1)(A)(iii), and its implementing regulation, 28 C.F.R. § 36.202(c);

(d) Utilizing standards or criteria of methods of administration that have the effect of discriminating on the basis of disability, in violation of 42 U.S.C. §12182(b)(1)(D)(i), and its implementing regulation, 28 C.F.R. § 36.204;

(e) Failing to make reasonable modifications in policies, practices, and procedures when the modifications are necessary to avoid discrimination on the basis of disability, in violation of 42 U.S.C. § 12182(b)(2)( (iii), and its implementing regulation, 28 C.F.R. § 36.302.

## NEGLIGENCE

45. Americans with Disabilities Act outlines accessibility standards for inclusion of individuals with disabilities.

46. Paragraphs 1-28 and 38 are incorporated herein.

47. By removing and failing to maintain the fire alarms, Defendants have breached Americans with Disabilities Act.

48. Sections of the 2010 ADA Standards for Accessible Design that set the standard for fire alarms are intended to promote accessibility, prompt warnings and information leading to evacuation in case of fire to help limit loss of life, injury and damage to property.

49. Paragraphs 36, 38 and *39 and 40* are incorporated herein.

50. But for Defendants' negligence in maintaining fire alarms, the fire would have been located more quickly and proper rescue procedures would have been implemented more efficiently.

51. Defendants negligence has led to damage to Plaintiff's property and subjected him to civil and criminal liability.

## BREACH OF CONTRACT

52. Paragraphs 1-28 are incorporated herein.
53. Paragraphs 36,38, 39, and 40 are incorporated herein.
54. Boston Realty has breached Section (f)4 of Contract.
55. Defendant Boston Realty Preach has caused damage to Plaintiff's property and subjected him to civil and criminal liability.
56. Pursuant to M. G. L. c. 93A, §§ 9 and 11, the Defendant owed the Plaintiff a fiduciary duty through the contractual agreement to maintain his property at 26267 Sumner Street in Boston, MA. Raul L., a representative and employee of the Defendant, chose to remove the smoke and fire detectors, allegedly to prevent them from sounding off when a tenant burned popcorn. It was the
57. Defendant's duty to assist the Plaintiff in keeping his property up to city code.
58. By removing the fire alarms, the Defendant put the Plaintiff who resided on the third floor of the building and the tenants who resided on the other three levels at significant risk.
59. The Plaintiff was placed at an even higher risk of facing criminal charges and fines for not having smoke detectors at his property.
60. The Defendant also failed to rectify the code violations in a timely manner and left the Plaintiff even more exposed by indicating to him that they had completed the tasks, failing to test the detectors they installed, and failing to reactivate the central system that is required by law.

61. The code violations were further exacerbated by the fact that the Plaintiff was not notified by the Defendant when the detectors were removed, his requests that the property be brought back up to code immediately were not followed, and he became aware of the issue as he was leaving for Thailand for a lengthy business trip.

62. The Defendant misled him about the progress made while he was overseas and relying on them to uphold their agreement to manage his property and represent his interests.

63. A month later, the Plaintiff was still in Thailand, when the fire occurred, which displaced 21 people and required 100 firefighters. A fire station was located a block and a half from the property. Three floors of the Plaintiff's property sustained water damage. The second and third floors and roof were severely burned and damaged.

64. The property had to be almost completely gutted for repairs to begin and many delays ensued because the water froze due to the inclement weather conditions in the months following the fire, the building where the fire began had code violations that included asbestos which caused the City to prevent the Plaintiff from having the snow shoveled, some utilities continued to accrue fees, unbeknownst to the Plaintiff. while the building was unlivable, and the Plaintiff lost thousands of dollars in running utilities, repairs, and rent.

## COUNTS AGAINST UNNAMED DEFENDANT"OWNER OF BUILDING AT 53 ORLEANS STREET" BOSTON, MA

## COUNT OF NEGLIGENCE

65. Paragraphs 1 through 36 are incorporated herein.

66. Then-owner of the adjacent property to the Plaintiff's property was criminally negligent, pursuant to M.G.L. c. 148 §8:

    Whoever, not being a tenant thereof, sets or increases a fire upon land of another whereby the property of another is injured, or whoever negligently or wilfully suffers any fire upon his own land to extend beyond the limits thereof whereby the woods or property of another are injured, shall be punished by a fine of not more than one thousand dollars or by imprisonment for not more than two years, and the town where such fire occurred may recover in an action of tort, brought within two years after the cause of action accrues, against any such person the expense of extinguishing such fire.

67. The Plaintiff had admonished the owner several times about the leaking roof which connected to the roof of the Plaintiff's property and leaked water onto the Plaintiff's property.

68. The Plaintiff finally moved forward with replacing the firewall that he and the Defendant shared because it was 140 years old and in disrepair.

69. The Defendant was cited after the fire for the presence of asbestos in the shingles and for causing the fire that spread to the Plaintiff's property.

## REQUEST FOR RELIEF AND DAMAGES

Wherefore the Plaintiff demands judgment against the Defendants for compensatory and punitive damages and interest, and damages for pain, suffering, and future loss, and any other such relief this Court deems fair, just, and honorable. Plaintiff demands a trial by jury.

Respectfully submitted,

*Mark Elliot*

---
Mark Elliot
Plaintiff
365 Sumner Street #3,
East Boston, MA 02128
markelliott1@gmail.com
70298405239